IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

WALTER PAYNE,                   )
                                )
    Plaintiff,                  )
                                )
v.                              )
                                )   No. 11-2664-JPM-tmp
CENTRAL DEFENSE SERVICES,       )
                                )
    Defendant.                  )

_____

**REPORT AND RECOMMENDATION**
_____

Before the court by order of reference is defendant Central Defense Services' ("Central Defense") Motion to Dismiss, filed on April 24, 2013. (ECF No. 64.) Plaintiff Walter Payne, *pro se*, filed a response in opposition on May 6, 2013. For the reasons below, it is recommended that Central Defense's motion be granted.

**I. PROPOSED FINDINGS OF FACT**

This case involves an allegation by Walter Payne, who is African-American, that Central Defense unlawfully terminated his employment as a security guard on the basis of his light skin color, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. On January 31, 2011, Payne filed an administrative Title VII Charge of Discrimination with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") ("discrimination charge"). On

March 21, 2011, Payne, through his bankruptcy counsel, filed a Chapter 13 voluntary bankruptcy petition with the United States Bankruptcy Court for the Western District of Tennessee (In re Payne, Case No. 11-22868). Pursuant to 11 U.S.C. § 521(a)(1)(B), Payne provided a schedule of assets and liabilities with his petition. As part of "Schedule B - Personal Property" ("Schedule B"), question 21 required Payne to disclose "[o]ther contingent and unliquidated claims of every nature . . . ." Payne failed to disclose the discrimination charge he had filed two months earlier. Payne did, however, disclose another case he had filed alleging unlawful termination against a previous employer, Payne v. Johnson & Johnson Health Care Sys., No. 2:08-cv-02680-JPM-cgc ("Johnson & Johnson case"). At the time he filed his bankruptcy petition, the Johnson & Johnson case was on appeal before the Sixth Circuit.[1] As part of his "Statement of Financial Affairs" ("Statement"), question 4 required Payne to disclose "all suits and administrative proceedings to which [he] is or was a party within one year immediately preceding the filing of this bankruptcy case." Payne failed to disclose his discrimination charge against Central Defense in response to question 4. Payne signed the petition and declared under penalty of perjury that the information provided in

---

[1] The Court of Appeals affirmed the dismissal of the complaint on March 11, 2011, and denied Payne's petition for rehearing on June 22, 2011. As of May 6, 2013, the case is still listed on Schedule B as a pending case.

his petition was true and correct. During May of 2011, Payne twice amended his bankruptcy petition, but did not amend Schedule B or the Statement to include his discrimination charge.

Two developments occurred on June 15, 2011. First, the bankruptcy court confirmed Payne's bankruptcy plan, relying on Payne's petition and schedules. The bankruptcy court's order required Payne to pay $57.00 per week into the plan. Second, Payne received a notice of dismissal and rights, or a "right-to-sue letter," from the EEOC. After receiving this notice, Payne filed a *pro se* Title VII complaint in the United States District Court for the Western District of Tennessee on August 4, 2011. Again, Payne did not amend his bankruptcy petition to include this case.

On two occasions, Payne referenced his pending bankruptcy proceedings to Central Defense and to the district court. As part of his initial disclosures required under Federal Rule of Civil Procedure 26(a)(1), Payne claimed in his computation of damages that his loss of employment caused him to file for bankruptcy. Payne made this disclosure to Central Defense on March 28, 2012. Later, Payne attached various documents from his bankruptcy proceedings to a motion for leave to amend his complaint, filed with the district court on April 12, 2012. However, on neither occasion did Payne amend his bankruptcy schedules to reflect the ongoing federal litigation.

On March 4, 2013, the district judge directed the parties to

engage in a settlement conference before the undersigned magistrate judge.  (ECF No. 55.)  The settlement conference was scheduled for April 2, 2013.  (ECF No. 58.)  On March 20, 2013, Central Defense discovered, allegedly for the first time, that Payne had previously filed for Chapter 13 bankruptcy protection.  Central Defense contacted Payne's bankruptcy attorney via e-mail to inform him of the federal litigation.[2]  Payne (through his attorney) then filed a motion with the bankruptcy court on April 2, 2013, styled "Motion for Permission to Settle Case."  In his motion, Payne stated that he "filed in the United State [sic] District Court for the Western District of Tennessee a lawsuit, *Walter Payne v. New Breed Corporation and Central Defense Security*, Case No. 2:11-cv-026640-JMP-tmp filed on August 4, 2011."  Payne requested permission from the bankruptcy court to participate in the settlement conference for that case, which was scheduled for April 2.  Although Payne informed the court of the existence of a discrimination claim against Central Defense, he offered no additional information regarding the case.  While Payne's motion was pending, Central Defense filed the instant motion to dismiss on April 24, 2013,

---

[2]There is no indication that Payne's bankruptcy attorney was aware of the ongoing discrimination lawsuit against Central Defense. During a status conference held on May 28, 2013, Payne stated that he had informed his bankruptcy attorney of the Johnson & Johnson case that was on appeal.  However, there is no evidence that he informed his bankruptcy attorney of the instant case against Central Defense.  In any event, as discussed below, even if Payne had informed his bankruptcy attorney of this lawsuit, judicial estoppel would still apply to bar his claim.

alleging Payne concealed his discrimination cause of action from the bankruptcy court and his creditors. Central Defense argues that because Payne failed to disclose his discrimination claim against Central Defense to the bankruptcy court, he is judicially estopped from pursuing the claim in federal court. As a result, Central Defense requests that Payne's discrimination case be dismissed.

On May 6, 2013, Payne amended Schedule B and the Statement in his bankruptcy petition to include the instant discrimination case and filed a response to Central Defense's motion to dismiss. In his response, Payne contends (1) he did not know he was required to disclose his claim in his bankruptcy petition, and (2) he disclosed the existence of his bankruptcy case to the district court and Central Defense.[3]

## II.  PROPOSED CONCLUSIONS OF LAW

---

[3]Payne also contends that Central Defense did not consult with him prior to filing its motion to dismiss as required by this court's local rules, and the motion is untimely because the motion was filed after the December 12, 2012 dispositive motions deadline in the scheduling order. This court's consultation requirement, found in Local Rule 7.2(a)(1)(B), does not apply to dispositive motions filed pursuant to Fed. R. Civ. P. 12 or 56. This motion also is not untimely because Central Defense has shown good cause to excuse the late filing, specifically, its recent discovery of the bankruptcy petition on or about March 20, 2013. Although Central Defense perhaps should have been on notice of the bankruptcy proceedings by April 2012, when it received Payne's Rule 26(a)(1) initial disclosures and his motion to amend the complaint, Payne has not been prejudiced by any delay in the filing of Central Defense's motion. Moreover, on May 30, 2013, the court granted Central Defense's motion for leave to file its motion of dismiss outside of the deadline set forth in the scheduling order.

**A. Treating Rule 12(b)(6) Motion to Dismiss as Rule 56 Motion for Summary Judgment**

In considering Central Defense's motion to dismiss under Rule 12(b)(6), a preliminary question arises as to whether the court must treat Central Defense's motion to dismiss as a motion for summary judgment under Rule 56. Pursuant to Rule 12(d),

> If, on a motion on Rule 12(b)(6) or Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Central Defense notes in its motion that the court may take judicial notice of the bankruptcy court filings without converting the motion to dismiss into a motion for summary judgment. See Plassman v. City of Wauseon, No. 95-3736, 1996 WL 254662, at *3 (6th Cir. May 14, 1996) (finding materials such as public records of other court proceedings and correspondence between the parties regarding the cause of action do not necessarily constitute matters outside the pleadings within the context of Rule 12(d)) (internal quotations omitted); Hamlin v. Baptist Mem'l. Hosp., No. 2:09-cv-02615-STA-cgc, 2011 U.S. Dist. LEXIS 25708, at *6-7 (W.D. Tenn. Jan. 27, 2011) ("Although the parties have attached filings from Plaintiff's bankruptcy proceeding as exhibits for consideration in this Motion, the Court may take judicial notice of these documents and consider them without converting Defendant's Motion into a motion for summary

judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure."). However, "[i]t is within the trial court's discretion to determine whether to convert a motion to dismiss into a motion for summary judgment." See Swanigan v. Northwest Airlines, Inc., 718 F. Supp. 2d 917, 922 (W.D. Tenn. 2010) (citing Ball v. Union Carbide Corp., 385 F.3d 713, 719 (6th Cir. 2004)). The court's consideration of the instant motion includes not only Payne's bankruptcy filings, but also other documents, such as Central Defense's email to Payne's bankruptcy attorney and Payne's initial disclosures. Under these circumstances, the court believes that it would be more appropriate to convert the instant motion into a motion for summary judgment, pursuant to Rule 12(d). See White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 475 (6th Cir. 2010) (noting that district court converted defendants' Rule 12(b)(6) motion to dismiss on judicial estoppel grounds into Rule 56 summary judgment motion). Treating the motion as one for summary judgment would not cause any prejudice or surprise to either party, since both parties have relied upon materials outside of the pleadings. See Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers, 203 F.3d 926, 931 (6th Cir. 2000).

Under Rule 56(a) of the Federal Rule of Civil Procedure, summary judgment shall be granted if the movant shows that "no genuine dispute as to any material fact" exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The movant carries the burden of proving the absence of a genuine issue of material fact, and all evidentiary and factual inferences are drawn in favor of the non-movant. Celotex v. Catrett, 477 U.S. 317, 323 (1986); see also Galloway v. Anuszkiewicz, No. 12-3367, 2013 U.S. App. LEXIS 5813, at *7 (6th Cir. Mar. 21, 2013) ("When determining whether the movant has met [its] burden, we view the evidence in the light most favorable to the nonmoving party"). The inquiry for the court is "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Stanciel v. Donahoe, No. 11-11512, 2013 U.S. Dist. LEXIS 65251, at *2 (E.D. Mich. May 8, 2013) ("The central inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.") (internal citations and quotations omitted).

**B.  Doctrine of Judicial Estoppel**

Under the doctrine of judicial estoppel, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not later assume a contrary position simply because his interests have changed. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The purpose of this doctrine is to preserve the "integrity of the courts by preventing a party

from abusing the judicial process through cynical gamesmanship." Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002) (quoting Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)); see also Cook v. St. John Health, No. 10-10016, 2013 WL 2338376, at *3 (E.D. Mich. May 29, 2013). The Supreme Court has provided three factors which typically inform a court's decision regarding the applicability of judicial estoppel: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court has been misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped. New Hampshire, 532 U.S. at 750–51. The Supreme Court stated, however, that these elements are not "inflexible prerequisites or an exhaustive formula" for judicial estoppel, and additional considerations may inform applicability in certain factual contexts. Id. at 751.

In the bankruptcy context, the Sixth Circuit has stated that in order to support a finding of judicial estoppel, the court must find that (1) the plaintiff assumed a position that was contrary to the one that he asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a

preliminary matter or as part of a final disposition; and (3) the plaintiff's omission did not result from mistake or inadvertence. White, 617 F.3d at 478. A debtor has an affirmative duty to disclose all of his assets to the bankruptcy court. Browning, 283 F.3d at 775 (citing 11 U.S.C. § 521(1)). The "integrity of the bankruptcy system depends on a full and honest disclosure by debtors of all their assets." Lewis v. Weyenhaeuser Co., 141 F. App'x 420, 428 (6th Cir. 2005) (quoting In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999)). In the Sixth Circuit, it is well-established that a cause of action is an asset that must be scheduled under § 521. See White, 617 F.3d at 479 n.5; Lewis, 141 F. App'x at 424; Eubanks v. CBSK Fin. Group, 385 F.3d 894, 897 (6th Cir. 2004); Garrett v. Univ. Hosps. of Cleveland, No. 1:12 CV 2371, 2013 WL 2186116, at *1 (N.D. Ohio May 21, 2013). In addition, "the duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." Lewis, 141 F. App'x at 424 (quoting In re Costal Plains, 179 F.3d at 208)(internal quotations omitted); see also Kimberlin v. Dollar General Corp., No. 12-3584, 2013 WL 1136563, at *3 (6th Cir. Mar. 20, 2013) (finding debtor had duty to disclose a potential claim arising from her employment termination, which occurred forty-one days after her final payment into her bankruptcy plan); Bartlett v. Ohio Nat'l Fin. Servs., No. 1:11-CV-638, 2013 WL 394381, at *3 (S.D. Ohio Jan. 31 2013) (applying judicial estoppel for failure to disclose when

plaintiff filed civil suit one month after bankruptcy court discharged debt because plaintiff had received right to sue letter from EEOC 88 days earlier). The court notes that while the doctrine of judicial estoppel may yield potentially harsh results, see White, 617 F.3d at 486-87 (Clay, J., dissenting), it has been consistently applied in the Sixth Circuit to bar a plaintiff from prosecuting a cause of action which he has omitted from his Chapter 13 bankruptcy petition. See, e.g., White, 617 F.3d at 482; Lewis, 141 F. App'x at 428; Cook v. St. John Health, No. 10-10016, 2013 WL 2338376, at *6 (E.D. Mich. May 29, 2013); Epps v. United States, No. 12-2844-STA-cgc, 2013 U.S. Dist. LEXIS 43308, at *14 (W.D. Tenn. Mar. 27, 2013); Schultz v. Hydro-Gear Ltd. P'ship, No. 5:12-CV-10, 2012 WL 3527068, at *4 (W.D. Ky. Aug. 15, 2012).

It is undisputed that, by omitting any reference to the discrimination claim in his Schedule B and Statement, and in this instant case, Payne "assumed a position that was contrary to the one that he asserted under oath in the bankruptcy proceedings," and that by confirming his plan, "the bankruptcy court adopted the contrary position." The question, then, is whether Payne's omission resulted from mistake or inadvertence. In making this determination, the court considers whether: (1) Payne lacked knowledge of the factual basis of the undisclosed claim; (2) he had a motive for concealment; and (3) the evidence indicates an absence of bad faith. White, 617 F.3d at 478. "In determining whether

there was an absence of bad faith, we will look, in particular, at [plaintiff's] 'attempts' to advise the bankruptcy court of [his] omitted claim." Id. It is the plaintiff's burden to present evidence establishing an absence of bad faith. Harrah v. DSW, Inc., 852 F. Supp. 2d 900, 905 (N.D. Ohio 2012) (citing White, 617 F.3d at 479).

The court finds that Payne had knowledge of the factual basis of the undisclosed claim, as evidenced by his discrimination charge filed two months prior to the filing of his bankruptcy petition. See White, 617 F.3d at 479 (finding that previously filed EEOC charge evidenced plaintiff's knowledge of factual basis of the undisclosed claim); Thomas v. Proctor and Gamble Distrib., No 1:11-cv-796, 2012 WL 4107868, at *3 (S.D. Ohio Sept. 19, 2012) ("Plaintiff's EEOC filing makes clear that she had knowledge of the facts forming the basis of her discrimination claim[]. . . ."). The court further finds that Payne had a motive to conceal his claim, because if the claim became a part of his bankruptcy estate, then the proceeds from it could go towards paying his creditors. See Lewis, 141 F. App'x at 426 ("It is always in a Chapter 13 petitioner's interest to minimize income and assets."); Epps, 2013 U.S. Dist. LEXIS 43308, at *14 (same); Johnson v. Interstate Brands Corp., No. 07-2227B, 2008 U.S. Dist. LEXIS 2670, at *10 (W.D. Tenn. Jan. 14, 2008) (holding a motive to conceal can be inferred from the omission itself, because by omitting the claims, the debtor

could keep any proceeds for herself and not have them become part of the bankruptcy estate).

As to whether Payne can point to evidence showing an absence of bad faith, Payne asserts that he did not know that he was required to disclose his EEOC discrimination charge or this lawsuit against Central Defense, stating in his response brief that "Plaintiff disclosed all information asked for by [bankruptcy counsel] Ben G. Sissman, because he was asked did he have any lawsuits pending in court; an [sic] the Plaintiff disclosed his only knowledge of the lawsuit pending in 6th Circuit Court." (ECF No. 66-1 at 2.) This argument is unpersuasive for several reasons. First, Payne's alleged misunderstanding of his duty to disclose does not demonstrate an absence of bad faith, especially given the fact that he has been represented by bankruptcy counsel. See Garrett, 2013 WL 2186116, at *6 (finding that plaintiff's assertions of lack of sophistication and legal ignorance were unreasonable to demonstrate inadvertence in that plaintiff was represented by counsel in both her bankruptcy and employment matters); Harrah, 852 F. Supp. 2d at 907 (stating that "[i]t does not appear that any court has accepted ignorance of the law as an excuse for a party's failure to comply with the requirement of full disclosure," and that "such ignorance is unreasonable where [plaintiff] was represented by an attorney in the bankruptcy, and any question about the required disclosures could have been

answered by her attorney"). Second, to the extent Payne implies that his bankruptcy attorney failed to explain to him that his discrimination claim had to be disclosed, his reliance on purported attorney error is not evidence of an absence of bad faith. Lewis, 141 F. App'x at 427 (applying judicial estoppel despite a plaintiff's claim of good faith reliance on her attorney's paralegal); Barger v. City of Cartersville, Georgia, 348 F.3d 1289, 1295 (11th Cir. 2003) (although the debtor's attorney failed to list the debtor's discrimination suit on the schedule of assets despite the fact that the debtor specifically told him about the suit, the attorney's omission was no panacea). Third, Payne disclosed the Johnson & Johnson case in his bankruptcy petition, and thus "[t]he inclusion of the other suit indicates that [plaintiff] (who signed the bankruptcy filings) was aware of this section of the bankruptcy filings, and of the requirement that [he] list [his] claims, including [his] discrimination claim, in it." White, 617 F.3d at 472.

The court further finds that Payne's Rule 26(a)(1) initial disclosures and his motion to amend his complaint, both of which referenced his bankruptcy proceedings, do not show an absence of bad faith. References to the bankruptcy proceedings in his Title VII case do not, in any way, address the concerns at issue - that is, whether Payne made "constant affirmative actions" to notify the bankruptcy court of his discrimination claim. Eubanks, 385 F.3d at

-14-

899. At a minimum, these constant affirmative actions must be made to the bankruptcy court, to inform the bankruptcy court of claims pursued in other tribunals - not to inform other tribunals of claims pursued in bankruptcy court. Browning, 283 F.3d at 775 (citing 11 U.S.C. § 521(a)(1)(B)(i)). Although Payne attempted to notify the bankruptcy court about his discrimination lawsuit by filing a motion with that court on April 2, 2013, this motion was filed only to seek permission from that court for Payne to engage in a settlement conference. The motion provided the bankruptcy court with no details regarding the litigation, and more importantly, Payne did not attempt at that time to amend his Schedule B or Statement. Payne did not amend his bankruptcy filings to add his discrimination claim until after Central Defense filed its motion to dismiss. This after-the-fact effort to amend is insufficient to show a lack of bad faith.[4] White, 617 F.3d at 481 ("We will not consider favorably the fact that White updated her initial filings after the motion to dismiss was filed. To do

---

[4]On May 30, 2013, the bankruptcy court entered an Interim Order on Debtor's Motion for Permission to Settle Case. In that order, the bankruptcy court stated "[a]fter discussing the motion with counsel, it appears that the cause of action accrued pre-petition and would be an asset of the bankruptcy estate. Thus, the trustee in bankruptcy has an interest in the District Court case and should be permitted to decide whether to intervene." The bankruptcy court continued the hearing on the Motion for Permission to Settle Case until June 6, 2013, in order for the trustee to determine whether to intervene as a party plaintiff. As of today's date, the bankruptcy court docket does not reflect what occurred at the June 6 hearing, and no further orders have been entered by the bankruptcy court.

so would encourage gamesmanship, since White only fixed her filings after the opposing party pointed out that those filings were inaccurate."); Harrah, 852 F. Supp. 2d at 905 (rejecting the argument that the debtor-plaintiff evidenced an absence of bad faith when her "ex post facto" efforts to apprise the bankruptcy court of civil claims only occurred in reaction to the defendant's judicial estoppel argument); Swanigan, 718 F. Supp. 2d at 926 ("This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets."). Therefore, the court finds that Payne's omission of his cause of action did not result from mistake or inadvertence. Thus, judicial estoppel bars his discrimination claim.

### III. RECOMMENDATION

For the reasons above, it is recommended that Central Defense's motion to dismiss under Rule 12(b)(6) be converted into a motion for summary judgment, and that the motion be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

June 13, 2013
Date

NOTICE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**